UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal No. 07-196 (TFH) |
| | : | |
| v. | : | (Under Seal) |
| | : | |
| HENRY D. CORONA, | : | |
| also known as "Norr," | : | |
| Defendant. | : | |

**GOVERNMENT'S MOTION FOR DOWNWARD DEPARTURE FROM GUIDELINES
AND STATUTE AND MEMORANDUM IN AID OF SENTENCING**

The United States of America, by its attorney, Jeffrey A. Taylor, the United States Attorney for the District of Columbia, respectfully requests that the defendant be sentenced to a term lower than is advised by the United States Sentencing Guidelines, and to a term lower than the mandatory minimum sentence called for by 21 U.S.C. § 841. Further, the United States notes facts relevant to sentencing the defendant.

**I. Background of the Case**

On August 10, 2007, defendant Henry D. Corona pleaded guilty, pursuant to a cooperation plea agreement, to a charge of Conspiracy to Distribute and Possess with Intent to Distribute 500 Grams or More of Methamphetamine, in violation of 21 U.S.C. § 846. Presentence Report ("PSR") ¶¶ 1, 3. The defendant acknowledged, pursuant to U.S.S.G. § 1B1.3, that he was accountable for 1.5 kilograms of methamphetamine (actual) and/or "ice." Id. ¶ 4.

**II. Defendant's History and Criminality**

Corona first began using methamphetamine (hereinafter also referred to as "meth") before he came to Washington, D.C. Once in this area, he began selling meth to support himself and his burgeoning habit. He worked intermittently at jobs where no skills were required and he did not attend school. See id. ¶¶ 48-58. Instead, Corona submerged himself in the drug culture, associating

with many well-known meth sellers and users. The investigation of the Drug Enforcement Administration ("DEA") into Corona's drug activities dates back to approximately 2003, when he was identified as a mid-level seller of meth.

Evidence obtained from a variety of sources and admitted by Corona reveals that he began associating with Derek Hawthorne in approximately 2004, and that Corona knew that Hawthorne was receiving pounds of meth from a supplier in California throughout the years of the conspiracy. Corona knew that Hawthorne did not have a significant source of income outside of his meth sales. Corona visited Hawthorne's high-rent apartment building and his yacht, selling or buying drugs in each location. Corona introduced Hawthorne to Joseph Frank Federici, a Citi Smith Barney financial planner, who later assisted Hawthorne in laundering over $1.5 million from meth sales. Between 2004 and 2007, Corona also sold meth to a number of customers.

Videotapes taken of Corona by the DEA show his appearance and attitude after consuming meth. The images are disturbing. They depict an overly confident Corona participating in meth sales and use. The confidence displayed by Corona when he was high is in stark contrast to the reality of his life as a meth distributor and addict. While in the meth culture, Corona did not develop himself as a adult. He did not learn a trade or craft or enter into college. Instead, he languished in a series of dead-end jobs – furniture salesman, balloon bouquet delivery man – and existed to sell and use meth. Sadly, number of cooperators have informed government counsel of the various health problems Corona experienced during his meth use and sales, many of which could have killed or blinded him. While involved in meth, Corona did not have a serious fixed address. At every turn, Corona cut himself off from a hopeful future.

While Corona's family members have kindly offered to provide him an apartment, this will not shelter him from the problems he will face upon release. Unfortunately, Corona's history indicates that he will trouble readjusting to life outside of jail. Corona's past indicates that he needs a firm plan for sobriety, education, and employment. Further, he will need to develop new social contacts with people who are not a part of the met subculture. Importantly, he will need to learn to take care of himself through legitimate work. If he is enabled by well-meaning associates, the government fears he will immediately return to addiction.

### III. Cooperation

Corona provided information about several targets and defendants in debriefings. However, because of his serious addiction and other problems, the government elected not to use him pro-actively. Corona debriefed with agents and assistant U.S. Attorneys in Washington, D.C. and the Eastern District of Virginia. He expressed a willingness to testify in trial should such testimony be needed. He viewed many photos of drug sellers and identified them to law enforcement. The defendant's co-conspirator, Hawthorne, has pleaded guilty, as has another unindicted co-conspirator, and the government believes that the defendant provided substantial assistance with regard to these prosecutions. Corona was also willing to testify against a financial planner from Citi-Smith-Barney, who eventually pleaded guilty to several charges. Corona should receive credit for having helped the U.S Attorney's Office for the Eastern District of Virginia secure that plea.

### IV. Potential for Recidivism

For several reasons, the government is concerned that Corona will re-offend. First, he has no marketable skills and he has not sought to live independently as an adult outside of the meth community. While he has informed government counsel that he enjoys certain leisure activities, he

does not have any career direction nor any stated desire to accomplish anything professionally that is within his reach. Second, the government is not persuaded that Corona has the will or the emotional tools to combat his addiction at this time. Government counsel is aware that recent scientific studies indicate that long-term meth usage permanently damages the dopamine and serotonin production in the brain making it even harder to combat addiction to meth than almost any other type of addiction. The government cannot say that it believes that Corona is ready for the formidable challenges he will face upon his release. Government counsel does not agree with the position of defense counsel in this matter. While Corona's parents have repeatedly come to court in support of his release, a clear plan for how Corona will deal with the complicated medical and psychological challenges that face him has not been articulated by anyone. Further, it must be clear to Corona that he is responsible for his own sobriety and that, as an adult, he cannot wait to be rescued from his problems by his parents or older male acquaintances. Supplying Corona with his own apartment will not correct his addiction nor provide him with job skills. Therefore, the government is concerned that Corona is not ready for release and will fail if he does not have a serious plan. Corona has now spent all of his emancipated years in the grips of the drug, which some estimate has a 98% addiction rate after first usage.

     The government hopes that these concerns will inform this Court's sentence of Corona, and that he will be held to strict and serious conditions. Indeed, a more prudent course may be confinement in a drug treatment facility and carefully fashioned terms of supervised release that will force Corona to face his circumstances.

## V. Sentencing

The government moves this Court, pursuant to 18 U.S.C. § 3553, not to apply the mandatory-minimum sentence, and to depart downward from the United States Sentencing Guidelines pursuant to U.S.S.G. §5K1.1, as Corona has provided substantial assistance. We request that Corona be sentenced to a period of incarceration of time-served, or that he be sent to a federal correctional facility to serve any additional time so that he might avail himself of the 500 hour drug treatment program before he is released. We also respectfully ask this Court to require Corona to participate in job training and to maintain legitimate employment throughout the period of his supervised release. Further, due to the unique nature of meth addiction, we ask this Court to require Corona to participate in drug treatment throughout his period of supervised release.

WHEREFORE, the government requests that the defendant be sentenced accordingly.

Respectfully submitted,

JEFFREY A. TAYLOR
UNITED STATES ATTORNEY
D.C. Bar No. 498-610

_____
S. Elisa Poteat
Assistant United States Attorney
D.C. Bar. No. 420-604
Organized Crime and Narcotics Trafficking Section
555 Fourth Street, N.W., Room 4820
Washington, D.C. 20530
(202) 514-7067

CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that service of the foregoing pleading was made by electronic mail upon counsel for the defendant, Cynthia Katkish, Esq., at Ckatkish1@comcast.net, this 18th day of August, 2008.

_____
S. Elisa Poteat
Assistant United States Attorney